IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| IFS FINANCIAL CORPORATION | § | CASE NO: 02-39553 |
|     Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| W. STEVE SMITH, TRUSTEE | § | |
|     Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 04-3841 |
| | § | |
| WOODFOREST NATIONAL BANK, *et al* | § | |
|     Defendant(s) | § | |

**MEMORANDUM OPINION GRANTING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

For the reasons set forth below, the Defendant's motion for partial summary judgment [attachment #1 to docket no. 76] is granted in part.

**Background**

The background facts set forth in this memorandum are viewed in the light most favorable to the trustee. *See Rodriguez v. ConAgra Grocery Products, Co.*, 436 F.3d 468, 473 (5th Cir. 2006).

IFS Financial Corporation ("IFS") is part of the Interamericas Companies comprised of Interamericas, Ltd., Interamericas Investments, Ltd., Interamericas Holdings, Inc., Interamericas Corporation, Interamericas Financial Holdings, Ltd., Interamericas Financial Holdings Corp., IFS, and other related entities (collectively "Interamericas").[1]  Interamericas took in money,

---

[1] Plaintiff Steve Smith is the Trustee of the following related cases pending before this Court: IFS Financial Corporation, Interamericas, Ltd., Interamericas Investments, Ltd., Interamericas Holdings, Inc., Interamericas Financial Holdings, Ltd., Interamericas Financial Holdings Corporation, Interamericas Corporation, Amper International, Ltd., Amper Ltd., INV Capital, Ltd., INV Services, Ltd., Orbost, Ltd., MP Corporation, Circle Investors, Inc., Comstar Mortgage Corporation, IFS Insurance Holdings Corporation, and Interstar Investment Corporation.

1

primarily from Mexican investors, with the interest to be paid from the operation of the various businesses of the Interamericas companies.[2] INV Services, Ltd.[3] was established to act as a repository for investor funds. Decisions concerning the operations of Interamericas were generally made by an Advisory Board, consisting primarily of Hugo Pimienta, Arturo Pimienta, Enrique Pimienta, Rodolfo Garcia, Ramon Beteta, Luis de la Pena, and Peter Ulrich.

Defendant Woodforest National Bank ("Woodforest") served as a lender to various Mexican borrowers referred by the Interamericas companies. Woodforest and INV entered into two contracts. Under the Loan Participation Agreement, INV agreed to purchase an undivided 95% interest in Woodforest's rights and obligations under certain notes (the "Notes"). Under the agreement, INV would pay 95% of the principal value of select loans and thereby receive a 95% interest in the proceeds while Woodforest remained responsible for collecting all payments due on the Notes. INV further agreed to place a certificate of deposit with Woodforest equal to the 5% participation interest in the loan retained by Woodforest. Under the second contract, the Loan Servicing Agreement, Woodforest reserved the right to administer the Notes and collect a fee for certain payments. Under both agreements, Woodforest agreed that "[Woodforest] shall give the same care to protect the interests of [INV] in the Notes as it does to protect its own interest in the Notes."

Between 1998 and 2002, the assets of the Interamericas companies were transferred between various entities and ultimately outside the companies. Many of the borrowers who obtained loans from Woodforest were also investors in Interamericas. Many of these borrowers retained the loan proceeds and failed to repay the loans when due.

---

[2] The Interamericas companies' businesses included mortgage banking, insurance, real estate, custom brokerage and transport forwarding, money exchange, construction/development and the food industry.

[3] INV Capital, Ltd. was the parent of INV Services, Ltd.

2

On October 12, 2004, the Trustee filed this adversary proceeding against Woodforest. The Trustee alleges that despite Woodforest's contractual duty to INV to protect INV's interest in the Notes, Woodforest never attempted to collect on the Notes or notify INV but simply took the CDs given by INV as security for its participation interest in the loans. Because the loans were between Woodforest and the borrowers—INV was never a party to the actual loans—and because the statute of limitations has run, they became uncollectible. In the first and second amended complaint, the Trustee, as Trustee of the Estate of INV Capital, Ltd. and INV Services, Ltd., seeks damages for conversion, unjust enrichment, fraudulent transfer, fraud, conspiracy and aiding and abetting fraud.

## Procedural Background

On September 14, 2006, Woodforest filed a motion for leave to file its motion for partial summary judgment based upon the Trustee's Second Amended Complaint. On September 25, 2006, the Trustee filed a motion for leave to file a Third Amended Complaint. The Court held a hearing on the motions for leave on October 16, 2006. The Court granted each motion and deemed both the amended complaint and the motion for partial summary judgment as filed on October 16, 2006. The Third Amended Complaint no longer alleges claims for fraud, conspiracy or aiding and abetting. Consequently the motion for partial summary judgment is moot with respect to the claims for fraud, conspiracy, and aiding and abetting.

## Summary Judgment Standard

A party seeking summary judgment may demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) the absence of a genuine issue of material fact. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005). Material facts are those that could affect the outcome of the

action or could allow a reasonable fact finder to find in favor of the non-moving party. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005).

The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial. At all times, a court views the facts in the light most favorable to the non-moving party. *Rodriguez v. ConAgra Grocery Products, Co.*, 436 F.3d 468, 473 (5th Cir. 2006). However, to weigh evidence would result in a credibility determination which is not part of the summary judgment analysis. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th Cir. 2001); *See MAN Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478 (5th Cir. 2006). A court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

If the movant bears the burden of proof, a successful motion must present evidence that would entitle the movant to judgment at trial. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Warfield*, 436 F.3d at 557. The non-moving party has a duty to respond with specific evidence demonstrating a triable issue of fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 402 (5th Cir. 2005). When identifying specific evidence in the record, the non-movant must articulate how that evidence supports its position. *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).

If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim. *Id.; see also Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005); *Ballard v. Burton*, 444 F.3d

391, 396 (5th Cir. 2006). The movant may seek summary judgment if insufficient evidence has emerged from discovery to support the non-moving party's claims. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2727 (3d ed. 1998). At this time the non-moving party must respond with sufficient evidence to support the challenged element of its case or present evidence to raise a material issue of fact. *Id.; Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 402 (5th Cir. 2005). Ultimately, the motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *See Condrey*, 431 F.3d at 197.

## Analysis

*Unjust Enrichment*

Woodforest first contends that summary judgment in favor of Woodforest is proper because the Trustee lacks standing to bring a claim for unjust enrichment under the doctrine of *in pari delicto*. *In pari delicto* is an equitable defense that bars a plaintiff's recovery where the plaintiff itself bears responsibility for the violations he seeks to redress and preclusion of the suit would not impede public policy concerns. Woodforest's argument that the Trustee lacks standing fails because the questions of whether a party has standing and whether the party's claims are barred by an equitable defense are separate questions. *Schertz-Cibolo-Universal City Indep. Sch. Dist. v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1286 (5th Cir. 1994); *see also Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1149-50 (11th Cir. 2006); *Baena v. KPMG, LLP*, 453 F.3d 1, 6-10 (1st Cir. 2006).

Nonetheless, the Court will treat the motion as a motion seeking a summary judgment finding that the defense of *in pari delicto* bars the Trustee's claim. *See Armstrong v. Capshaw, Goss & Bowers,* 404 F.3d 933 (5th Cir. 2005) (noting that district courts must determine the true

nature of a pleading by its substance, rather than its labels). The Trustee contends that the defense is inapplicable to an innocent party such as a bankruptcy trustee who steps into a debtor's shoes to recover on behalf of victims of the debtor's bad acts. In support of his argument, the Trustee cites cases in which courts have held that a receiver was not subject to the defense. Although such cases are good law, they are distinguishable from the instant case because a receiver is not subject to the restrictions of the Bankruptcy Code. Section 541(a) provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This provision ensures that the Trustee holds only those rights that the debtor held at the commencement of the case. Consequently, a trustee is subject to the *in pari delicto* defense if the defense would have been available in an action against the debtor. *In re Segerstrom*, 247 F.3d 218, 224 (5th Cir. 2001) (the trustee stands in the debtor's shoes and is subject to all defenses available against the debtor); *see also* 11 U.S.C. § 541; *Nisselson v. Lernout*, 469 F.3d 143, 153 (1st Cir. 2006); *Edwards*, 437 F.3d at 1150. If INV was subject to the defense of *in pari delicto* when it filed bankruptcy, the Trustee is likewise subject to the defense.

Whether the Trustee's claim is barred by the *in pari delicto* defense is governed by Texas law. *See*, *e.g.*, *Nisselson*, 469 F.3d at 154 (citing *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 84 (1994)). Texas courts consider whether the plaintiff must rely on his own illegal acts to establish his case. *Plumlee v. Paddock*, 832 S.W.2d 757, 759 (Tex. App.—Fort Worth 1992, writ denied); *Lewis v. Davis*, 199 S.W.2d 146, 151 (1947). Even when parties are determined to be *in pari delicto*, relief may be granted to the plaintiff if public policy demands it. *Lewis*, 199 S.W.2d at 151 (court will consider whether the policy against assisting a wrongdoer outweighs the policy against permitting unjust enrichment of one party at the expense of the other).

6

The Trustee does not dispute Woodforest's allegations that the owners and managers of the Debtor entities, including INV, established an investment scheme to defraud creditors.[4] Instead, the Trustee defends that such alleged wrongdoing should not bar his claims since as a trustee, his goal is to remedy the alleged wrongs and benefit the innocent creditors. In support of his argument, the Trustee cites *Lewis v. Davis*. In *Lewis*, the Texas Supreme Court explained:

> It has been said that even where the parties are *in pari delicto* relief will sometimes be granted if public policy demands it. There is often involved, in reaching a decision as to granting or withholding relief, the question whether the policy against assisting a wrongdoer outweighs the policy against permitting unjust enrichment of one party at the expense of the other. The solution of the question depends upon the peculiar facts and the equities of the case, and the answer usually given is that which it is thought will better serve public policy.

*Lewis*, 199 S.W.2d at 151; *see also San Benito Bank & Trust Co. v. Rio Grande Music Co.*, 686 S.W.2d 635, 639 (Tex. App.—Corpus Christi 1984, writ refused n.r.e.) (finding that the appellant, although culpable, could recover on a promissory note), *superseded by rule* TEX. R. EVID. 203. In *Norman v. B.V. Christie & Co.*, 363 S.W.2d 175 (Tex. Civ. App.—Houston 1962, writ refused n.r.e.), the court applied this reasoning and held that a joint venturer, despite suing the other member for benefits conveyed pursuant to an illegal contract, was allowed to recover because refusal to enforce the contract would create a right in the other member dependent entirely on the contract. This matter is analogous. Woodforest should not be allowed to rely on the equitable defense of *in pari delicto* to avoid the Trustee's action when doing so allows Woodforest to retain benefits it received pursuant to the contract.

Furthermore, the facts at trial could demonstrate that public policy is best served by allowing the Trustee to pursue his cause of action for unjust enrichment. In determining whether allowing a culpable party to recover promotes public policy, the Court may overlook the

---

[4] The Trustee does not dispute that the alleged wrongful acts and knowledge of the owners and managers of INV are attributable to INV. *Latch v. Gratty, Inc.*, 107 S.W.3d 543, 545 (Tex. 2003); *Poth v. Small, Craig & Werkenthin, L.L.P.*, 967 S.W.2d 511, 515 (Tex. App.—Austin 1998, pet. denied).

respective guilt of the parties. The court should consider "the higher right of the public; the guilty party to whom relief is granted being only the instrument by which the public is served." *Wright v. Wight & Wight*, 229 S.W. 881, 881 (Tex. Civ. App.—El Paso 1921) (noting that relief is granted to discourage similar transactions by others). In the present matter, the Trustee seeks to recover funds from Woodforest for the benefit of innocent creditors. Although the law provides that a bankruptcy trustee stands in the debtor's shoes, the Court cannot determine without a trial how to balance the respective equities that are demanded by Texas law when an *in pari delicto* situation is presented. Although Woodforest and the Trustee may be *in pari delicto*, Texas law may permit the Trustee to pursue his claim for unjust enrichment on public policy grounds. In short, this is not a matter on which summary relief should be granted in this case.

Alternatively, Woodforest argues that summary judgment is appropriate with respect to the Trustee's claim for unjust enrichment. The Trustee alleges that Woodforest took a benefit from INV by taking undue advantage of them. Generally, a party may not recover under the theory of unjust enrichment when the same subject is covered by an express contract. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *Inglish v. Prudential Ins. Co. of America*, 928 S.W.2d 702, 706 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (citing *Truly v. Austin,* 744 S.W.2d 934, 936 (Tex.1988); *Bado Equip. Co. v. Bethlehem Steel Corp.,* 814 S.W.2d 464, 473 (Tex. App.—Houston [14th Dist.] 1991, no writ). The Trustee admits that the Loan Participation Agreement and Loan Servicing Agreement govern the parties' relationship. In fact, the Trustee argues that Woodforest was unjustly enriched since it received payments under the agreements but failed to fulfill its duties to the Debtor under the agreements. To the extent that the Trustee argues Woodforest was unjustly enriched by way of payments from INV

8

for its participation interest in the Notes, the claim sounds in breach of contract and the remedy of unjust enrichment is not available.

One of the notes in dispute is referred to by the parties as the Yune Note. The Trustee's summary judgment record includes evidence demonstrating that Woodforest looked to INV CDs and assets unrelated to the Yune Note to recover. With respect to the Yune Note collection activities, the Trustee is alleging more than a right to enforce a contract. Instead, the Trustee is alleging that Woodforest seized control over a number of assets and that the seizure was outside of the party's contractual relationship. Indeed, he is alleging that Woodforest exercised dominion over assets after the contractual participation arrangement on the Yune Note was terminated.

The Court cannot determine—on summary judgment—the veracity of those allegations. Nevertheless, the existence of a separate contractual relationship does not preclude a suit for unjust enrichment if the unjust enrichment is alleged for a matter that it outside of the scope of the contract. As the Texas Supreme Court has explained:

> Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory, see generally *TransAmerican Natural Gas Corp. v. Finkelstein*, 933 S.W.2d 591, 600 (Tex. App.-San Antonio 1996, writ denied), with certain exceptions not relevant here, see, e.g., *Southwestern Electric Power Co. v. Burlington Northern Railroad Co.*, 966 S.W.2d 467, 469-70 (Tex.1998) (observing that overpayments under a contract can be recovered under a theory of restitution or unjust enrichment).

*Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).

As the Texas Supreme Court set forth in *Fortune Products,* it is not the mere existence of a contract that precludes an unjust enrichment claim. Rather, the unjust enrichment claim is precluded if it seeks relief that is inconsistent with the contract. In an earlier case, the Texas

9

Supreme Court reviewed Texas law with respect to the co-existence of unjust enrichment claims with contractual claims:

> SWEPCO is correct in its assertion that in some circumstances, overpayments under a valid contract may give rise to a claim for restitution or unjust enrichment. See, e.g., *Staats v. Miller*, 150 Tex. 581, 243 S.W.2d 686, 687-88 (1951) (allowing restitution for 470 excess money held by defendant after selling plaintiffs' cotton harvester pursuant to oral contract); *Bowers v. Missouri, Kan. & Tex. Ry. Co.*, 241 S.W. 509, 510-11 (Tex.Civ.App.-Texarkana 1922, no writ) (allowing restitution for freight charges paid in excess of rates specified in shipping contract); see also *Gulf Oil Corp. v. Lone Star Producing Co.*, 322 F.2d 28, 31-33 (5th Cir.1963) (holding that plaintiff could recover money mistakenly paid in excess of contract price); *Natural Gas Pipeline Co. v. Harrington*, 246 F.2d 915, 921 (5th Cir.1957) (holding that gas company was entitled to restitution of difference between contract rate and price paid under invalid rate order set by regulatory board). SWEPCO complains that the court of appeals held that the existence of a contract precludes all claims for unjust enrichment or restitution. We do not read the opinion of the court of appeals to include such a holding. The court correctly observed that if the contract rates were paid under the transportation agreements, there could be no recovery of "overcharges" under a theory of unjust enrichment.

*Southwestern Electric Power Co. v. Burlington Northern Railroad Co.*, 966 S.W.2d 467, 469-70 (Tex.1998).

The Trustee's allegations with respect to the Yune Note are not inconsistent with his contractual relationship with Woodforest. Accordingly, summary judgment is denied.

*Conversion*

Woodforest contends that summary judgment is appropriate with respect to the conversion claim because no fact issue exists. To sustain a claim for conversion, the Trustee must show that: (1) INV owned, possessed, or had a right of immediate possession of the property; (2) the property was personal property; (3) Woodforest wrongfully exercised dominion and control over the property; and (4) INV suffered injury. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997). It is undisputed that the Notes are personal property. Woodforest argues,

10

however, that summary judgment in favor of Woodforest is proper because Woodforest owned and did not wrongfully control the Notes and because INV received no injury.

An instrument is converted if a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. TEX. BUS. & COMM. CODE § 3.420(a); *AMX Enterprises, Inc. v. Bank One, N.A.*, 196 S.W.3d 202, 207 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).[5] The summary judgment record demonstrates that Woodforest issued the Notes and that Woodforest had a right to collect payment under the Notes. INV held a 95% participation interest in the Notes. In addition, pursuant to the Loan Participation Agreement and the Loan Servicing Agreement, INV was entitled to payment of its participant share, less a servicing fee, upon Woodforest's receipt of payment.

The Trustee has presented evidence that Woodforest received payment on loans made to Abastecedora Lumen S.A. de C.V. and Polidex, S.A. de C.V. but failed to remit INV's share to INV in accordance with the loan documents. Although Woodforest has presented evidence to the contrary, it is inappropriate for the Court to weigh the evidence at the summary judgment stage. *Hunt*, 277 F.3d at 762. The Trustee has also presented evidence that INV was damaged to the extent it invested, and never recovered, 100% of the face value of each Note with Woodforest.

Because the Trustee has presented sufficient evidence to raise a fact issue as to whether INV had a right of immediate possession of the property and whether Woodforest wrongfully exercised control over the property, the Court denies Woodforest's motion for partial summary judgment with respect to the conversion claim.

---

[5] Texas law provides that the measure of damages for conversion of a negotiable instrument is the plaintiff's interest in the instrument. TEX. BUS. & COMM. CODE § 3.420(b).

11

*Fraudulent Transfer*

Woodforest further contends that the Trustee has failed to establish a claim for fraudulent transfer and therefore Woodforest is entitled to summary judgment on the claim. Texas law defines a fraudulent transfer as:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

TEX. BUS. & COMM. CODE § 24.005(a).

The Trustee does not dispute that he has not established a claim under § 24.005(a)(1). Instead, the Trustee's claim is based upon § 24.005(a)(2). To prevail on a claim for fraudulent transfer under this subsection, the Trustee must prove that INV did not receive reasonably equivalent value in exchange for the asset transferred and either that INV (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of INV were unreasonably small in relation to the business or transaction or (ii) intended to incur, or believed or reasonably should have believed that INV would incur, debts beyond INV's ability to pay as they became due.

"Reasonably equivalent value" is defined as including, "without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction." TEX. BUS. & COMM. CODE § 24.004(d). In reaching a

12

determination of whether reasonably equivalent value was exchanged, the Court should weigh the "value" of the property received by INV against the "value" of the property it transferred to Woodforest. *In re Besign*, 981 F.2d 1488, 1495 (5th Cir. 1993). Value is determined as of the date of the transfer. *Mladenka v. Mladenka*, 130 S.W.3d 397, 407 (Tex. App.—Houston [14th Dist.] 2004, no pet.)

The summary judgment record does not include any evidence to support a finding that at the time of the transfers, reasonably equivalent value was not exchanged. Instead, the record shows that INV paid Woodforest 95% of the value of the Notes in exchange for a 95% interest in the Notes. The Trustee argues, however, that because Woodforest, and thus INV, never received payment on some of the Notes, reasonably equivalent value was not exchanged. The fact that the Notes ultimately proved to be of limited value does not affect the determination of value on the date of the transfer. *See, e.g. In re Hannover Corp.*, 310 F.3d 796, 802 (5th Cir. 2002).

Consequently, the Court finds that the Trustee has failed to establish that a genuine issue of material fact exists, and therefore summary judgment in favor of Woodforest with respect to the Trustee's fraudulent transfer claim is granted.

## Conclusion

Based upon the foregoing, Woodforest's motion for summary judgment is granted as to the fraudulent transfer causes of actions and denied as to all other causes of action.

Signed at Houston, Texas, on May 3, 2007.

_____
MARVIN ISGUR
United States Bankruptcy Judge

13